LESLIE FREYER, RESPONDENT, v. BANK OF LADDONIA, APPELLANT.*

St. Louis Court of Appeals.   Opinion filed June 7, 1927.

1.—Account Stated—Evidence—Insufficient to Show Account Stated. In an action by a depositor against a bank for the amount of forged checks paid by the bank and charged to the depositor's account, evidence held not to show an account stated as there was no agreement between the parties that the items of the account as shown by the statement, or the balance struck, was correct, nor was there any promise, express or implied, for the payment of such balance.

2.—Same—Not Pleaded as Defense—Instructions—Issue Withdrawn from Jury—Proper. Where a bank, in an action against it for the amount of forged checks paid by it, did not plead that there was an account stated and agreed upon between the parties, an instruction excluding the defense of an account stated was proper.

3.—Banks and Banking—Forgeries—Forged Checks—Payment of—Ratification—Not Pleaded as Defense—Instructions—Issue Withdrawn from Jury—Proper. Where a bank, in an action against it by a depositor for the amount of forged checks paid by it and deducted from the depositor's account, did not plead ratification by plaintiff of the payment by defendant of the forged checks, an instruction excluding such defense was proper.

4.—Same—Same—Same—Same—Estoppel—Not Pleaded as Defense—Instructions—Issue Withdrawn from Jury—Proper. Where a bank, in an action by a depositor against it for the amount of forged checks paid by it, failed to plead that the depositor was estopped to assert that the checks were forgeries, an instruction excluding such defense from the consideration of the jury was proper.

5.—Same—Same—Same—Same—Same—Evidence—Depositor Not Estopped to Assert Checks Paid by Bank Were Forgeries. In an action by a depositor against a bank for the amount of forged checks paid by the bank and deducted from the depositor's account, evidence held to show that the plaintiff did not mislead the bank into the payment of the forged checks so as to be estopped to assert that the checks were forged, where the officers who paid the checks knew that the checks did not bear the genuine signature of the plaintiff at the time it paid them.

6.—Same—Same—Same—Same—Evidence—Deposits—Payment of Overdraft—Depositor Not Precluded from Recovery. In an action by a depositor against a bank for the amount of forged checks paid by the bank and charged to the depositor's account, the fact that the depositor paid an overdraft shown by a statement or account rendered by the bank charging depositor with the forged checks held not an admission of the correctness of the account and not to preclude a recovery of the amount of the forged checks where the dealings between the parties continued during the entire period just as before, and it was obvious under the conceded facts that the extinguishment of the overdraft in the manner stated was not regarded or understood by either of the parties as payment of a balance claimed to be due on an account rendered.

7.—Same—Same—Same—Presenting Check to Bank for Amount of Forged Check—Useless—Not Required as Payment Would Have Been Refused. In an action by a depositor against a bank for the amount of forged checks paid by the bank and charged to the depositor's account, held the depositor was not precluded from recovery by reason of his failure to present to the

bank a check for the amount sued for as a demand for payment of this amount, where it was manifest that the payment of such check would have been refused, as the law does not require the doing of a useless thing.

*Corpus Juris-Cyc. References: Accounts and Accounting, 1CJ, p. 678, n. 71; p. 691, n. 96, 97, 99, 1, 2; p. 728, n. 94; p. 730, n. 19; Actions, 1CJ, p. 980, n. 39; Banks and Banking, 7CJ, p. 664, n. 65; p. 669, n. 39; p. 671, n. 46 New; Evidence, 22CJ, p. 325, n. 87; Trial, 38Cyc, p. 1615, n. 21; p. 1636, n. 24.

Appeal from the Circuit Court of Audrain County.—Hon E. S. Gantt, Judge.

Affirmed.

*Abbott, Fauntleroy, Cullen & Edwards* and *Kennen & Kennen* for appellant.

(1) An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance. Bambrick v. Simms, 102 Mo. 158; Stewart v. R. Co., 157 Mo. App. 225; Edmonson v. Carriage, etc., Co., 149 Mo. App. 128; Barr v. Lake, 126 S. W. 755; Davis v. Boswell, 77 Mo. App. 294; Marmon v. Waller, 53 Mo. App. 610. (2) Where an account is rendered by one person to another, the retention of the same by the latter beyond a reasonable time without objection, is evidence of his assent to the correctness of the account, and, accordingly, is evidence of an account stated. The person receiving the account thus retains it beyond a reasonable time without objection, this fact, if unexplained, establishes an assent to the correctness of the account, and a promise to pay the same, and so establishes an account stated. Kent v. Highleyman, 17 Mo. App. 9; Missouri Pac. R. Co. v. Coombs Co., 71 Mo. App. 299; Shepard v. State Bank, 15 Mo. App. 143; Alexander v. Scott, 150 Mo. App. 213; Marmon v. Waller, 53 Mo. App. 610; McCormick v. Sawyer, 104 Mo. 36. (3) The periodical balancing of a pass book, which is retained by the purchaser and in which all purchases are charged and credits for payments given, the balances struck being carried forward as balance due, will constitute an account stated. And the same is generally true as regards a bank pass book written by the bank and delivered to a depositor with the vouchers. Shepard v. State Bank, 15 Mo. 143; Kenneth Inv. Co. v. Republic Nat. Bank, 96 Mo. App. 125; McKeen v. Boatmen's Bank, 74 Mo. App. 281; But see Linn County v. Farmers', etc., Bank, 175 Mo. 539; Lieber v. St. Louis Fourth Nat'l Bank, 137 Mo. App. 158. (4) Where the parties meet and go over their accounts and strike

a balance in favor of one of them, to which the other assents as correct, this constitutes an account stated. Borkowski v. Janicke, 157 S. W. 125; Silver v. St. Louis, etc., R. Co., 5 Mo. App. 381 (aff. 72 Mo. 194). (5) The meeting of the minds of the parties upon the correctness of an account stated is usually the result of a statement of account by one party and an acquiescence therein by the other. The form of the acquiescence or assent is, however, immaterial, and may be implied from the conduct of the parties and the circumstances of the case. Powell v. Pacific R. Co., 65 Mo. 658; Alexander v. Scott, 150 Mo. App. 213. (6) The defense of ratification may exist when there is no authorization and the court erred in denying defendant's right of recovery, even though the plaintiff ratified the act of the bank in paying the disputed checks. Mechem on Agency (2 Ed.), sec. 348, p. 261; Mechem on Agency (2 Ed.), sec. 432, p. 314; Applegate v. Baxley, 93 Ind. 147, 149; National Bank v. Norton, 1 Hill 572, 576; City of Longview v. Capps, 123 S. W. 160 (citing 7 Words & Phrases, pp. 6446-6550). (7) The evidence was sufficient to make payment or settlement a question for the jury and the court erred in instructing the jury peremptorily that there was no evidence of settlement or payment. Mechem on Agency (2 Ed.), sec. 432, p. 314; Applegate v. Baxley, 93 Ind. 147, 149; National Bank v. Norton, 1 Hill 572, 576; City of Longview v. Capps, 123 S. W. 160. (8) The payment of the balance due upon an account rendered is an admission of its correctness; and the same is true where an account is received without objection, and the amount of the balance is credited on a subsequent account against the party presenting the first account. McCormick v. St. Louis, 166 Mo. 315; Bewick v. Butterfield, 60 Mich. 203, 26 N. W. 881; Beals v. Wagener, 47 Minn. 489, 50 N. W. 535.

*W. H. Logan* and *Fry & Hollingsworth* for respondent.

(1) This is an action for debt and the petition pleads the facts in conventional form. Quattrochi Bros. v. Bank, 89 Mo. App. 500; Kenneth Inv. Co. v. Bank, 96 Mo. App. 125; Lieber v. Bank, 137 Mo. App. 158; Biscuit Co. v. Grocer Co., 143 Mo. App. 300; Kenneth Inv. Co. v. Bank, 103 Mo. App. 613; Trust Co. v. Bank, 154 Mo. App. 89; Allen Gro. Co. v. Bank, 182 S. W. 777. And no demand was necessary to entitle plaintiff to recover money deposited with defendant bank after it claimed "payment;" a litigant is not required to take steps which admittedly would have proven futile. Bank v. Benoist et al., 10 Mo. 327. (2) Proof of payment of forged checks makes prima-facie case against bank, and it must affirmatively plead negligence on the part of plaintiff (which was not done) in order to avail itself of a claim of "settlement" by reason of plaintiff making no objection to the checks being charged to his account within a reasonable time

.after receipt of pass book—that is, in effect, estoppel. East St. Louis Cotton Oil Co. v. Bank, 205 S. W. 96; Kenneth Inv. Co. v. Bank, 96 Mo. App. 125; McClendon v. Bank, 174 S. W. 204. (3) "Payment" was not pleaded and was not, therefore, available as a defense in this case. Musgrove v. Bank, 174 S. W. 171, 187 Mo. App. 483; Donijanovic v. Hartman, 152 S. W. 424, 169 Mo. App. 204; St. Louis Tire Co. v. McKinney et al., 245 S. W. 1100. (4) A "settlement" such as will constitute an accord and satisfaction must be the result of an agreement between the parties to that effect. Green v. Whaley, 197 S. W. 360, and cases therein cited; Musgrove v. Bank, 174 S. W. 176. (5) Defendant's instruction No. 3 was properly refused because: (1) It was both beyond the scope of the pleadings and the evidence; State ex'rel. v. Coal & Coke Co., 195 S. W. 724; Degonia v. Railroad, 224 Mo. 589. (2) It undertook to single out evidence and to judicially declare and broaden its meaning and import, which was a question for the jury to determine. (6) Defendant's instruction No. 4 was properly refused because it wholly ignores the fact that plaintiff was regularly depositing money in defendant bank in ordinary course for the purpose of meeting such checks that he might issue; ignores the pending dispute between the parties as to the correctness of the account; and ignores the question of agreement between the parties, which was absolutely necessary to show "accord and satisfaction" or "payment" or "ratification."

SUTTON, C.—This action was commenced on January 30, 1925. It is alleged in the petition that the defendant is a banking corporation; that plaintiff was for many years a customer of and a depositor of money with defendant, which relation of customer of and depositor with defendant was instituted and maintained with a mutual agreement and understanding between plaintiff and defendant that any and all sums of money so deposited by plaintiff with defendant should be subject to disbursement or withdrawal only upon due presentation of plaintiff's checks drawn upon defendant and demand for payment thereof made by the payee or endorsee thereon named; that defendant, in violation of its agreement and understanding with plaintiff to pay out and charge to his account money deposited by him in said bank to only such persons as were holders of his checks in due course, as hereinabove stated, did, between the dates of February 15, 1924, and August 15, 1925, wrongfully and illegally pay to divers persons and charge plaintiff's deposit account with twentyone false and spurious checks, aggregating $601.40, all of which said checks were drawn upon defendant and purported to bear plaintiff's signature as the maker thereof; that each and every one of said checks were forgeries and that none of said checks were drawn or uttered by any person authorized by plaintiff so to do; that in

August, 1924, plaintiff discovered that defendant had illegally and wrongfully paid out of his funds on deposit in said bank, and had illegally and wrongfully charged his account with the aggregate amount of said checks; and that he then demanded of defendant that it restore to his account the total amount of funds paid out by it on said checks, which said demand the defendant refused, and now refuses; and judgment is prayed for the sum of $601.40, with interest and costs.

The answer denies generally the allegations of the petition, and it is alleged therein, by way of affirmative defense, that, on or about the 16th day of February, 1925, and after the plaintiff had notified the defendant that he would not be liable for the payment of said checks mentioned and described in the petition the said plaintiff was indebted to the defendant in a large sum, said indebtedness being evidenced by the plaintiff's notes payable to the defendant and by an overdraft of plaintiff's account with the defendant, and that on said day and with full knowledge and information concerning the matters and things alleged in his petition herein the said plaintiff made a settlement with the defendant and on said day a full and complete settlement of all charges and accounts between the said Leslie Freyer and said Bank of Laddonia was had in such manner as to constitute a complete accord and satisfaction of any and all claims by either of them against the other.

A further affirmative defense is set up to the effect that the checks were drawn and uttered by Eggert pursuant to a collusive arrangement between Eggert and plaintiff, whereby Eggert was to forge plaintiff's name to checks and obtain money thereon, and divide the proceeds with the plaintiff. It appears, however, that this defense has been abandoned.

The trial, with a jury, resulted in a verdict and judgment in favor of plaintiff for $614.25, including interest, and the defendant appeals.

It is conceded that twenty-one checks, aggregating $601.40, which were not signed by plaintiff, were paid by defendant and charged to plaintiff's account, and that plaintiff's name was signed to the checks by Frank Eggert, as alleged in the petition. Defendant's officers who paid the checks testified that they knew that the checks were not signed by the plaintiff, both because the plaintiff's name as signed to the checks was not correctly spelled and because the name as signed was obviously not in the plaintiff's handwriting. Defendant at the trial undertook to justify the payment of the checks on the ground that it was expressly authorized by plaintiff to pay the same. This was made the chief, if not the only, issue at the trial.

The first of the twenty-one spurious checks paid by defendant is dated February 15, 1924, and is for the sum of $50, the second is dated February 25, 1924, and is for the sum of $35, and the re-

maining nineteen are variously dated from April 12, 1924, to August 12, 1924, and are for various amounts ranging from $1.50 to $60.

The evidence for the defendant tends to show that when the $50 check was presented for payment the cashier observed that the name as signed to the check was not the genuine signature of the plaintiff, and so informed Eggert; that thereupon Eggert stated that he worked for plaintiff, and that he (Eggert) had written the check and signed plaintiff's name to it; that the check showed on its face that it was for work; that the cashier, after having questioned Eggert a while, concluded to take a chance, and paid the check; that about ten days afterwards the check for $35 came in through the mail, and the cashier, observing that the name as signed to the check was not the plaintiff's genuine signature, declined to pay the check; that on that afternoon plaintiff came in the bank, and the cashier presented to plaintiff both the $50 check and the $35 check, and that plaintiff told the cashier to pay these checks and any other checks to which his name was signed in the same handwriting. This the plaintiff flatly denied. He testified that he had no conversation with defendant's cashier concerning the checks, and had no knowledge or notice of the drawing or payment of the checks until August 16, 1924.

Plaintiff was a farmer and resided on a farm about five miles south of Laddonia, where defendant's banking house was located. He was a customer of and depositor with the defendant for many years. He was accustomed to borrow money from the bank on his personal notes without security, and the bank held his notes in amounts aggregating $5300 on August 16, 1924. Eggert was an orphan boy, and was raised by plaintiff's brother, who resided on a farm. He was twenty-four years old at the time of the forgeries in question. He had worked for plaintiff's brother on his farm, and on a few occasions had done some work for plaintiff, but did not work for plaintiff at any time during the period in which the forgeries were committed, nor for a long time prior thereto.

On March 1, 1924, defendant mailed to plaintiff a statement of his account for January and February of that year, showing daily deposits, checks, and balances or overdrafts. This statement showed the dates and amounts of the various deposits, the dates of the payment of the various checks, and the amounts thereof, but did not show the dates of the checks, or the payees thereof, or to whom the checks were paid. Among the entries in this statement are the following:

Old Balance $313.63, Feb. 16; Checks $1, $50; New Balance $364.-63 o. d.

Old Balance $125.08, Feb. 29; Checks $35.00; New Balance $90.08.

The evidence for defendant tends to show that all the checks for January and February were returned to plaintiff with this statement. Plaintiff denied this, and testified that only a portion of the checks

were returned to him with the statement, and that the two forged checks were not returned to him.

On August 16, 1924, the defendant mailed plaintiff a further statement of his account, showing daily deposits, checks, and balances, or overdrafts from March 1st down to the date of the statement. This statement showed overdrafts on various dates ranging from $73.42 to 433,51, and showed an overdraft of $325.32 on August 16th. It also showed balances in favor of plaintiff on various dates ranging from $21.28 to $422.12. The evidence for defendant tends to show that all the checks paid during the period covered by this statement were returned to plaintiff with the statement. Plaintiff denied this, and testified that only a portion of the checks were returned to him with the statement, and that only twelve of the forged checks were returned. Immediately upon the receipt of this statement and the checks returned therewith, the plaintiff went to the home of the cashier of the bank and called his attention to the forgeries and also to the fact that all of the checks as shown by the statement had not been returned to him with the statement. Whereupon the cashier told the plaintiff to go to the bank and take the matter up with the assistant cashier. Plaintiff testified that on his arrival at the bank, the assistant cashier procured from the files the checks which had not been returned to plaintiff, and all the checks were gone over, and the twenty-one forged checks were assorted out and marked with a blue pencil. Plaintiff insisted at the time, and has ever since insisted, that these checks were forged and were therefore improper charges against his account.

After the rendition of the account of August 16th, plaintiff continued to do business with defendant, making deposits with defendant and giving checks drawn on defendant as before. But an overdraft existed in the account as shown by defendant's books from that date until February 10, 1925, ranging on various dates during that period from $12.32 to $410.40. On February 10, 1925, a balance in favor of plaintiff of $234.37 appears. After that time plaintiff continued to give checks on the bank until March 20, 1925, when his balance was reduced to sixty-two cents, and this was the status of his account at the time of the trial. After the rendition of the account of August 16th, plaintiff, at some time, which does not definitely appear, paid off the notes defendant held against him.

The cashier testified that he went into the bank while plaintiff and the assistant cashier were going over the checks following the rendition of the statement or account of August 16th, and that he then told plaintiff that he had authorized the payment of the checks he was complaining about. Plaintiff testified, however, that the cashier made no such statement to him at the time, and that the cashier never at any time claimed that plaintiff had authorized the payment

of the checks, until his deposition was taken shortly before the trial, but on the contrary proposed that defendant would stand one-half of the loss resulting from the payment of the checks.

Eggert was prosecuted for forging some one or more of these checks, and was sentenced to a term of two years in the penitentiary therefor. He was serving his term at the time of the trial of this case. The cashier testified that he knew of this prosecution from the time of its institution, but never at any time informed the prosecuting attorney, Eggert's attorney, the sheriff, the court, or any one concerned with the prosecution, that the plaintiff had authorized the payment of the checks.

On a number of occasions during the period from March 1st to August 16, 1924, defendant sent plaintiff notices of overdrafts. In response to these notices, plaintiff protested that he had not overdrawn his account, and insisted that there was something wrong. The evidence for defendant tends to show that on these occasions the cashier or assistant cashier exhibited plaintiff's checks to him, and that plaintiff went over the checks and made no objection to any of them; whereas the plaintiff testified that the checks were not exhibited to him, and that he never saw any of the forged checks until he received the statement of August 16th.

At the instance of the plaintiff the court gave to the jury the following instructions:

"The court instructs the jury that your verdict in this case shall be for the plaintiff, unless you find and believe from the evidence that the plaintiff authorized the defendant bank to pay the twenty-one checks here in suit."

"The court instructs the jury that there is no evidence in this case that the plaintiff ever made any settlement of the claim here in suit with the defendant; and that issue is withdrawn from your consideration."

At the instance of the defendant the court gave to the jury the following instruction:

"The court instructs the jury that if you believe and find from the evidence that on or about February 29, 1924, two of these checks in dispute had been presented to the bank and that while said checks were in the bank the plaintiff told the officers of the bank to pay said checks and such other similar checks as might thereafter be presented, then you will find for the defendant."

The defendant assigns error here upon the giving of plaintiff's instructions.

It is obvious that there was no evidence to support the plea of settlement or accord and satisfaction as pleaded in the answer. The defendant's learned counsel contend, however, that the evidence shows

the creation of an account stated. They rely on the statement of August 16th in support of this contention. In argument they say:

"An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance. Where an account is rendered by one person to another, the retention of the same by the latter beyond a reasonable time without objection, is evidence of his assent to the correctness of the account, and, accordingly, is evidence of an account stated. The person receiving the account thus retains it beyond a reasonable time without objection, this fact, if unexplained, establishes an assent to the correctness of the account, and a promise to pay the same, and so establishes an account stated."

It is obvious from counsel's own statement of the law that there was no showing in this case of an account stated. There was no agreement between the parties that the items of the account as shown in the statement of August 16th, or the balance struck, was correct, nor was there any promise, express or implied, for the payment of such balance. On the contrary, plaintiff made prompt and vigorous objection to the correctness of the account as stated. He promptly informed defendant's officers that the twenty-one checks in question were forgeries. He insisted then, and has ever since insisted, that these checks were improperly and wrongfully charged against his account. All the evidence concedes this.

Moreover, defendant does not plead the statement of August 16th as an account stated and agreed upon between the parties as a defense in the case, but pleads settlement or accord and satisfaction, which is alleged to have occurred on February 16, 1925.

The defendant also contends that the evidence tends to show ratification by plaintiff of the payment by defendant of the forged checks, and also tends to show conduct on the part of plaintiff estopping him to assert that the checks were forged, and that plaintiff's instructions erroneously excluded these defenses from the consideration of the jury. It is a sufficient answer to this contention that these defenses were not pleaded. In support of this contention, defendant presses upon our attention the evidence tending to show the delivery to plaintiff of the statement of March 1st, together with the two first spurious checks, and the retention of them by the plaintiff without objection and without notifying defendant that the checks were forged, and insists that by this conduct on the part of the plaintiff, it must be held that the defendant was misled into the payment of the succeeding nineteen checks, and that plaintiff is thereby estopped to assert that the checks were forged. Under the conceded facts in this case, we do not see how the defendant could have been

misled into paying the forged checks by such conduct of the plaintiff. There was no contention on the part of defendant at the trial that it was misled by such conduct. On the contrary, its officers who paid the checks testified that they knew the checks did not bear the genuine signature of the plaintiff, and that they paid the checks solely because the plaintiff expressly authorized them to do so.

Defendant argues that the payment of the balance due upon an account rendered is an admission of its correctness, and that plaintiff, having paid the overdraft shown by the statement or account rendered by defendant on August 16th, is concluded thereby. We cannot accept this doctrine as applicable to the facts of this case. The making of deposits by plaintiff and checking on his account at intervals in the regular and usual course of business in his relation as customer of and depositor with the defendant, until the overdraft was thereby finally extinguished and a balance in favor of the plaintiff established, cannot be regarded as payment of a balance claimed to be due defendant on an account rendered, any more than the accrual of an overdraft of $601.40 (if this had occurred) by such a course of dealings between the parties could have been regarded as payment of plaintiff's claim against defendant. During the period from August 16, 1924, to February 10, 1925, the plaintiff made deposits aggregating $1194.07, and gave checks, which were honored by defendant, aggregating $634.38. It is manifest that the relation of depositor and banker was maintained between the parties during this entire period just as before. It is conceded that during this entire period plaintiff was insisting that the forged checks were improper charges against his account and that his account be credited with the aggregate amount so charged against it. It is obvious under the conceded facts that the extinguishment of the overdraft in the manner stated was not regarded or understood by either of the parties as payment of a balance claimed to be due on an account rendered.

The instructions requested by defendant and refused by the court are out of accord with the views herein expressed, and were properly refused.

There is no merit in the suggestion of defendant that plaintiff is not entitled to recover because he did not present to defendant a check for the amount due him. The law does not require the doing of a useless thing. It is manifest from the record before us, that, if plaintiff had presented to defendant a check as a demand for payment of the amount claimed by him to be due from defendant on account of the payment of the twenty-one forged checks, payment of such check would have been refused.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.